UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OSBORNE PARTNERS CAPITAL MANAGEMENT, LLC,

    Plaintiff,

    v.

LIA WHISLER, et al.,

    Defendants.

Case No. 22-cv-02689-RS

**ORDER ON MOTION FOR TRO AND EXPEDITED DISCOVERY**

## I. INTRODUCTION

Osborne Partners Capital Management ("Osborne") seeks a Temporary Restraining Order ("TRO") against its former employee Lia Whisler and her new employer, Parallel Advisors ("Parallel"). It accuses Whisler of stealing trade secrets, specifically client information she used in attempting to convince her existing clients to move to Parallel. Osborne cannot establish that it is likely to succeed on the merits of its claims, so for the reasons further set out below, its motion for a TRO is denied. Osborne's motion for expedited discovery is granted, subject to conditions explained herein, as is limited expedited discovery for Defendants.

## II. BACKGROUND

From 2018 until April 29, 2022, Defendant Lia Whisler worked for Osborne. She abruptly left Osborne and moved to Defendant Parallel Advisors, emailing clients she had serviced at Osborne about that development. On May 3, Osborne sent a cease and desist letter, requesting that Whisler and Parallel stop using alleged trade secrets and sent a "corrective communication," demanding a response within five hours. When Parallel did not respond to Osborne's satisfaction,

Osborne filed suit against Whisler and Parallel under the U.S. Defense of Trade Secrets Act, tortious interference, breaches of duty of loyalty and contract (against Whisler alone), and under California's Unfair Competition Law. Osborne immediately moved for a TRO and expedited discovery.

In its motion, Osborne argues Whisler must have taken a client list, which it insists constitutes a trade secret, and one doubly covered by a confidentiality agreement, because she contacted so many former clients, seemingly at least 60, presumably based on the number of people who reached out to Osborne. Several clients expressed concern and confusion about the state of their money, in part because Whisler noted in her email "I am still your financial coach" and implied that as their fiduciary she had a duty to recommend they move their money to Parallel. Osborne also took a dark view of several actions Whisler took before leaving its employ: shortly before her departure she scheduled client meetings for shortly after her transition to Parallel; she said she was slow in completing a transaction because she wanted to complete parts of it at Parallel; she said a client's fee structure wouldn't change (in Osborne's view, evidence that she was improperly using confidential knowledge); and finally, that she only spent an average of two hours and 30 minutes on her company laptop in the period before leaving Osborne.

Whisler responds that she did not take any document from Osborne, and notes Osborne has no direct evidence to the contrary. Instead, she asserts she was able to contact clients based on public sources, e.g., LinkedIn or Spokeo, contact information she had in her personal capacity because some clients were friends or family, and simple recollection of clients' information. She disputes the characterization that her emails were misleading about her clients' ability to keep their business with Osborne. Further, she argues the laptop data does not reflect all the work she was doing for Osborne, and the statement she made about slow-rolling a transaction was intended to be polite to a client who had been slow in responding to complete the transfer. Finally, Parallel notes it has a policy of matching new clients' existing fee structures, which explains Whisler's statement that her clients' fees wouldn't change, without Whisler having to convey any information about Osborne's fee structures while at Parallel.

### III. LEGAL STANDARD

The standard for a preliminary injunction and a temporary restraining order are substantially the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under either one, the plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### IV. DISCUSSION

#### A. TRO

Osborne has not met its burden to obtain a TRO. A TRO is an "extraordinary remedy" and there must be a "clear showing" that a plaintiff is entitled to such relief. *Winter*, 555 U.S. at 22. While Osborne may ultimately triumph on some of its claims, it has not adduced evidence sufficient to show that it will succeed on the merits at this juncture. *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1124 (C.D. Cal. 2009) (citation omitted). First, as Osborne acknowledged at oral argument, there is no evidence Whisler took a client list.[1] That leaves Osborne only with a possible case that Whisler misused information she knew.

Osborne's use of client identities could be a violation of trade secret law if the development requires substantial resources. *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521-22 (1997). This is so even if Whisler used no other proprietary information, such as clients' goals. *Id.* In contrast, if the clients' identities were readily ascertainable through public sources like business directories, or could be easily identified, client identities will not count as trade secrets. *Id.* Some cases have found that the mere identities of clients for financial advisory services can constitute a trade secret. *See, e.g.*, *First Found. Inc. v. Giddings*, No. CV 20-00359-DOC-KES, 2020 WL

---

[1] Osborne's declaration is also lacking on what sorts of client lists it maintains, and although it establishes that it protects client information, it does not show only employees with a need to know have access, which can be a crucial factor.

ORDER ON MOTION FOR TRO AND EXPEDITED DISCOVERY
CASE NO. 22-cv-02689-RS

3

1082641, at *4 (C.D. Cal. Mar. 7, 2020). However, in those cases the proponent of the injunctive relief made the requisite "clear showing," e.g., outlining a client development process that "takes approximately four to six months, at a cost to FFA that ranges from $25,000 to $50,000 per prospect." *Id.* Here, Osborne's statements are too conclusory to constitute such a "clear showing." *See* Declaration of Sonia Von Berg at ¶ ¶5-8 ("Part of what makes us successful as a business is that we have identified people who want wealth management services […] Many of these relationships come from trusted referrals, friendships and business relationships that have taken years and even decades to cultivate. […] Osborne Partners has spent substantial resources obtaining and developing the information detailed above.")[2]

Some of Osborne's remaining claims are largely or entirely derivative of its Trade Secrets claim. To the extent they are not, Osborne cannot show it is likely to succeed. Whisler has reasonable explanations that counter Osborne's case for the breach claims, and there is scant evidence either Defendant did anything else inappropriate sufficient to constitute tortious interference or Unfair Competition. Indeed, Parallel has policies whereby it attempts to ensure new employees are not bringing or using confidential information from past employers, and it has evidence it implemented them in this case. Osborne's employment agreements with Whisler included several provisions that appear to be unenforceable under California law, including non-competition and non-solicitation agreements. Cal. Bus. & Professions Code § 16600. Even if Osborne had a stronger case, much of the relief it seeks would be overbroad and restrict Whisler's rights in contravention of California law.[3]

---

[2] Osborne relies upon *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir. 1993), in arguing that the use of client information for solicitation automatically constitutes a violation. However, in *Mai Systems* it was undisputed that the list of customers at issue was a trade secret. Here, by contrast, there has not been a sufficient showing that the client information is a trade secret in the first instance.

[3] On the other hand, Whisler notes her employment agreement included a mandatory arbitration clause, although the confidentiality provision was excepted. Whisler frames this arrangement as allowing Osborne to pick and choose whether to arbitrate, despite the mandatory arbitration clause, and attempting to recast its unenforceable non-competition clauses in the guise of trade secrets claims. This tactic has been found to be unconscionable. *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 664-66 (2004).  In any case, these arguments need not be reached because Osborne's motion for a TRO is denied.

Further, Osborne would have difficulty showing the other prongs of the test for a TRO as well. First, as to irreparable harm, if lost business can be remedied with damages, injunctive relief is forbidden. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). While "evidence of threatened loss of prospective customers supports a finding of irreparable harm," *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001), many of these cases turn on the loss of prospective customers because their business is not easily quantifiable, and thus not easily remedied with damages. Some cases have found irreparable harm from the loss of existing customers' prospective business, but these largely hinge on there being a likelihood of the business's reputation and goodwill being tarnished. *See, e.g.*, *Giddings*, No. CV 20-00359-DOC-KES, 2020 WL 1082641, at *5. Again, Osborne has essentially supplied only conclusory statements to this effect. The most specific statements that relate to the effect on its business beyond Whisler's clients are (a) that some of her clients know other Osborne clients, and (b) some of Whisler's clients were scared that their money had been moved. The speculative chain of inferences that one investment manager leaving and writing an unclear email will somehow tarnish Osborne's reputation with any of its clients does not constitute a clear showing there is a likelihood of irreparable harm.

As to a TRO being in the public interest, California has a clear public policy against non-solicitation clauses, and its courts have given only scant support for the "so-called" trade secrets exception on a tort theory. *See* Cal. Bus. & Professions Code § 16600; *The Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1233 (2009). The federal Defending Trade Secrets Act also notes that injunctions cannot issue under its authority if they conflict with state laws prohibiting restraint of trade. 18 U.S.C.A. § 1836(b)(3)(A)(i)(II). Thus, it is not clear that issuing an injunction would be in the public interest. *Winter*, 555 U.S. at 20. *But see, e.g.*, *Giddings*, No. CV 20-00359-DOC-KES, 2020 WL 1082641, at *6 (finding an injunction was in the public interest).

### B. Expedited Discovery

Finally, Osborne moves for expedited discovery about Whisler's communications with her former clients, Parallel's practices, and similar topics. The party seeking expedited discovery must

ORDER ON MOTION FOR TRO AND EXPEDITED DISCOVERY
CASE NO. 22-cv-02689-RS

make a prima facie case for the need for expedited discovery and show good cause. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *TGG Mgmt. Co. Inc. v. Petraglia*, No. 19-CV-2007-BAS-KSC, 2019 WL 6310556 at*2 (S.D. Cal. Nov. 25, 2019), 2019 WL 6310556, *2 (citing *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)). A claim for misappropriation, on its own, is not enough to justify special discovery. *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 69-70 (D.N.H. 2012).

Here, Osborne has shown a sufficient need for expedited discovery. While Osborne has not cleared the high burden for a TRO, there are sufficient suspicious facts about Whisler's behavior that expedited discovery is warranted. For example, while Whisler explains the email that appears to show delaying of her work at Osborne to benefit Parallel, currently there is only her word to contravene the seemingly damning email. Further, the volume of clients at issue raises at least some doubt as to whether Whisler misappropriated any information from Osborne. Finally, unlike some cases where exploitation of trade secrets might take years, Whisler's campaign to convince clients to switch will likely play itself out over the next few months. These concerns are not enough to show Osborne is likely to succeed on the merits, but they are enough to justify expedited discovery. Osborne has sought expedited discovery immediately in order to inform its preliminary injunctive relief, and the relief is generally appropriately tailored. This is sufficient for a prima facie case and good cause.

That said, Osborne's proposed discovery is somewhat overbroad. The interrogatories are largely mooted by the deposition, so no interrogatories will be allowed at this stage. The proposed Request for Production ("RFP") to Whisler, #3, for all communications between her and Whisler, is more appropriately tailored to communications about confidential information. RFP #1 to Parallel, for all communications relating to Whisler's recruitment, seems overbroad or irrelevant. Thus, while Osborne's motion for expedited discovery is granted, it is granted with limits: it is ordered to propound a narrower set of requests in line with the comments above.

Defendants gave an adequate showing for expedited discovery during the hearing on this motion, so they are granted two depositions and five requests for production, to be shared among

both Defendants. All expedited discovery by both parties shall be complete by May 20, 2022.

## V. CONCLUSION

Osborne's motion for a TRO is denied. Osborne's Complaint seeks a preliminary injunction. Assuming Osborne persists in that wish, it is directed to file a motion for a preliminary injunction by May 27, 2022. That motion should outline what form of security it would provide pursuant to Fed. R. Civ. P. 65(d). Defendants' response, or responses, shall be due by June 3, 2022. Any such motion shall be heard on June 16, 2022. Osborne's motion for expedited discovery is granted, subject to the conditions above, and Defendants are granted expedited discovery, also limited as described. All expedited discovery shall be complete by May 20, 2022. Any discovery disputes are hereby referred to a randomly assigned magistrate judge. Finally, Osborne's administrative motion to remove an incorrectly filed document is granted.

**IT IS SO ORDERED**.

Dated: May 9, 2022

_____
RICHARD SEEBORG
Chief United States District Judge